UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>v.<br><br>JESUS PEREZ-GARCIA,<br><br>                         Defendant. | Case No.:  22-CR-1581-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR REVIEW**<br><br>**[ECF No. 44]** |

Before the Court is Defendant Jesus Perez-Garcia's ("Defendant" or "Perez-Garcia") Motion for Review of the Magistrate Judge's Order denying his motion to amend the conditions of his pretrial release. ECF No. 44. Specifically, Mr. Perez-Garcia argues Standard Condition #4 and 18 U.S.C. § 3142(c)(1)(B)(viii),[1] which prohibits pretrial releasees from possessing or attempting to possess firearms, is unconstitutional following the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Magistrate Judge Goddard denied Mr. Perez-Garcia's Motion on September 18, 2022, (ECF No. 41), and he filed the present Motion

---

[1] 18 U.S.C. § 3142(c)(1)(B)(viii) is the statute that authorizes Standard Condition #4.

1

in this Court on October 3, 2022, (ECF No. 44). The United States filed an Opposition on October 18, 2022, (ECF No. 47), and Mr. Perez-Garcia filed a Reply on October 24, 2022, (ECF No. 59). On November 4, 2022, the Court held a hearing. ECF No. 61. After considering both the papers and oral argument, the Court **DENIES** Defendant's Motion.

## I.     Background

Perez-Garcia was arrested on June 14, 2022 and charged with importation of a controlled substance in violation of 21 U.S.C. §§ 952, 960. ECF No. 44 at 2. On June 30, 2022, he was released on bond, and his conditions of pretrial release included Standard Condition #4 ("Condition #4"), which required him to surrender his firearms. *Id.* Prior to imposing the condition, Magistrate Judge Goddard conducted a hearing where Mr. Perez was represented by court-appointed counsel and permitted to offer evidence. Afterward, the Court issued an order imposing the firearms prohibition, travel restrictions, and requiring a collection of a DNA sample. *See* ECF No. 10 (Pretrial Release Order).

In the wake of *Bruen*, Defendant moved on July 29, 2022 to modify his conditions of pretrial release to remove Condition #4. ECF No. 29. Judge Goddard denied his request for two reasons: (1) the Second Amendment did not protect Defendant's conduct because there is probable cause to believe he is not a law-abiding citizen; and (2) surety statutes and other historical regulations for "dangerous" groups were analogous to U.S.C. § 3142(c)(1)(B)(viii) and therefore Condition #4 withstood historical scrutiny under *Bruen*. ECF No. 41 at 10-12. This Motion followed.

Perez-Garcia's Motion states that he would like to possess a firearm so that he can work as a security guard and protect his family. ECF No. 44 at 2-3. Prior to his arrest, Perez-Garcia worked as a security guard and was required to carry a gun as a condition of his employment. *Id.* at 2. His conditions of pretrial release thus meant he was not able to return to work, and he "has been unable to secure comparable employment with any other employer." *Id.* Perez-Garcia also states that "[i]n addition to the economic hardship he

has experienced, [he] has been deprived of all the other benefits of lawful gun ownership promised to him by the Second Amendment, including the right to defend himself and his family." *Id.* at 2-3. Mr. Perez-Garcia lives in a "high crime" community and must protect his mother and sister, who is completely blind. *Id.* at 3. Defendant asks this Court to remove Condition #4 and allow him to possess firearms pending his trial.[2]

## II.     Legal Standard

A district court reviews a magistrate judge's conclusions of law de novo. *See United States v. Martinez-Garcia*, 2010 WL 11474434, at *2 (D. Ariz. Aug. 24, 2010) (citing *Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) (conclusions of law by a magistrate judge are reviewed de novo)).

A magistrate judge's findings as to the conditions of pretrial release should also be reviewed de novo. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Still, a district court is not required to "start over in every case" or "proceed as if the magistrate's decision and findings did not exist." *Id.* The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

## III.    Discussion

Mr. Perez's challenge requires the Court to answer whether § 3142(c)(1)(B)(viii) denies an individual charged with a serious drug offense the rights guaranteed under the Second Amendment. The constitutionality of § 3142(c)(1)(B)(viii) as a condition of bail is an issue of first impression in this Circuit, and the Court is only aware of one other

---

[2] The Government argues that Defendant's request to modify Condition #4 is premature because Defendant has not yet found a job that requires him to carry a firearm as a condition of employment. ECF No. 46 at 5. The Court rejects this argument because in his Motion, Defendant states he would like to possess a gun for self-defense purposes, as well as whatever employment benefits might accompany possession. Thus, Defendant's challenge is ripe for review.

post-*Bruen* court asked to determine the validity of pretrial release firearm regulations. *See United States v. Slye*, 2022 WL 9728732, at *3 (W.D. Penn. Oct. 6, 2022) (holding the firearm prohibition is constitutional because there is "long-standing precedent for denial of pretrial release and its attendant denial of the right to possess firearms"). For the reasons below, the Court concludes that the Second Amendment does not prohibit this condition where it is necessary to reasonably ensure the safety of any other person or the community.

### A. 18 U.S.C. § 3142

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141–3156, outlawed excessive bail requirements for defendants pending trial. *See* 18 U.S.C. § 3142(c)(1)(B) (obligating court to fashion bail package with "least restrictive condition or combination of conditions"). Where a judicial officer determines that the pretrial release of a defendant on personal recognizance, or upon execution of an unsecured appearance bond, will not reasonably assure the appearance of the defendant as required or will endanger the safety of the community, such judicial officer is empowered to impose the least restrictive further condition, or combination of conditions, that will reasonably assure the person's appearance and community's safety. 18 U.S.C. § 3142(c)(1)(B).  The Bail Reform Act recognizes the judicial officer's discretion to choose among fourteen specified conditions of the defendant's release, including curfews, travel restrictions, and prohibiting the possession of firearms. 18 U.S.C. § 3142(c). At issue, § 3142(c)(1)(B)(viii) provides a discretionary condition that prohibits the accused "from possessing a firearm, destructive device, or other dangerous weapon."

To determine which conditions should be imposed, § 3142(g) directs a judicial officer to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person; (3) the history and characteristics of the

person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### B. *Heller* and *Bruen*

In *District of Columbia v. Heller*, 554 U.S. 670, 574-75 (2008), the Supreme Court invalidated a District of Columbia law that effectively banned the possession of handguns. Following *Heller*, "the Courts of Appeals . . . coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125. The Ninth Circuit adopted the following two-step inquiry post-*Heller*: (1) whether the challenged law burdened conduct protected by the Second Amendment; and (2) if so, whether the court should apply strict or intermediate scrutiny. *See United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). *Chovan*

Fourteen years later, the Court in *Bruen* "decline[d] to adopt [*Heller*'s] two-part approach," and invalidated New York state's "may-issue" licensing regime for public carry. *Bruen*, 142 S. Ct. at 2126. Instead, *Bruen* adopted a two-part test that hinges on the text and history of the Second Amendment: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129. The "plain text" of the Second Amendment guarantees "the individual right to possess and carry weapons in the case of confrontation." *Id.* at 2134. If an individual's proposed course of conduct falls within this textual understanding, the Government bears the burden to show that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2135.

/ / /

### C. Threshold Issues Under *Bruen*

*Bruen*'s reasoning does not suggest that its two-step inquiry automatically applies to any regulation involving or affecting firearms. A court should examine various threshold issues before proceeding to *Bruen*'s Second Amendment test.

### i.     "Law-Abiding"

*Bruen*'s majority opinion and concurrences suggest that non-law-abiding individuals lie outside the scope of Second Amendment protection and can fairly be subject to gun regulations. The *Bruen* majority opinion uses the phrase "law-abiding" nearly a dozen times. *See e.g.*, *Bruen*, 142 S. Ct. at 2124-25 ("[P]etitioners Brandon Koch and Robert Nash are law-abiding, adult citizens . . . ."); *id.* at 2133 (stating courts should determine how and why a regulation burdens a "law-abiding citizen's right to armed self-defense"); *id.* at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of the "the people" whom the Second Amendment protects."); *see also United States v. Riley*, --F. Supp. 3d--, 2022 WL 7610264, at *10 (E.D. Va. Oct. 13, 2022) ("A plain reading of the text demonstrates that "the people" remains limited to those within the political community and not those classified as felons."); *United States v. Charles*, --F. Supp. 3d--, 2022 WL 4913900, at *11 (W.D. Tex. Oct. 3, 2022). Justice Alito's concurrence specifically states, "All that we decide in this case is that the Second Amendment protects the right of *law-abiding* people to carry a gun outside the home for self-defense . . . ." *Bruen*, 142 S. Ct. at 2159 (Alito, J., concurring) (emphasis added). Thus, a reasonable interpretation of *Bruen* is that it does not obfuscate the requirement that, as a threshold matter, to receive Second Amendment protection, one must first and foremost be law-abiding.

Judge Goddard's opinion denied Perez-Garcia's request, in part, on the grounds that he was not a law-abiding citizen because there was probable cause he committed a crime. Although the Court ultimately agrees with Judge Goddard's finding that §

3142(c)(1)(B)(viii) is constitutional, it does not do so on the same grounds. Condition #4 by its very nature applies only to individuals that have been accused and charged with a crime, but are not yet convicted. Thus, it is problematic for the Court to find the Second Amendment does not protect individuals on pretrial release because they are not "law-abiding." *Cf. United States v. Quiroz*, 2022 WL 4352482, at *10 (W.D. Tex. Sept. 19, 2022) (stating that excluding those under indictment from the Second Amendment would act as a "prior restraint" in the First Amendment context because they have not yet been convicted under a "constitutionally sufficient proceeding"). One of the most basic tenets of our legal system is that individuals are presumed innocent until proven guilty. *See Coffin v. United States*, 156 U.S. 432, 454-56 (1895).

### ii.     "Presumptively Lawful" Regulations

*Heller* identified a list of "presumptively lawful" regulations such as the "longstanding prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, [and] laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. The *Heller* Court stated "these presumptively lawful regulatory measures are only examples; [the] list does not purport to be exhaustive." *Id.* at 627 n.26. Properly interpreted, the Second Amendment allows a "variety" of gun regulations. *Id.* at 636.

Courts pre- and post-*Bruen* have cited *Heller*'s "presumptively lawful" regulations to uphold statutes such as § 922(g)(1) (felon-in-possession) and other regimes regulating the commercial sale of firearms. *See e.g.*, *United States v. Butts*, 2022 WL 16553037, at *3 (D. Mont. Oct. 31, 2022) (§ 922(g)(1)); *United States v. Tilotta*, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) (commercial sale of arms). *Heller*'s "presumptively lawful" regulations are consistent with *Bruen*'s reasoning and survive in the post-*Bruen* era because the presumptively lawful exceptions are themselves based on "historical

justifications." *Heller*, 554 U.S. at 635; *see also Riley*, 2022 WL 7610264, at *9 ("After all, *Heller* confirmed that its 'presumptively lawful' determination as to felon in possession statutes like § 922(g)(1) derived from 'historical justifications.'"). Further, the insistence that some regulations are "presumptively lawful" is "reiterated" in Justice Kavanaugh's concurrence. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting this portion of *Heller*).

§ 3142(c)(1)(B)(viii), or prohibiting pretrial releasees from possessing firearms, is not included in *Heller*'s list of presumptively lawful regulations. Still, this does not mean § 3142(c)(1)(B)(viii) is not presumptively lawful because the *Heller* list was not meant to be exhaustive. *See Heller*, 554 U.S. at 627 n.26. *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), which found that § 922(g)(9) (firearm restriction for domestic violence misdemeanants) was not "presumptively lawful," provides guidance. The Ninth Circuit in *Chovan* stated that to be "presumptively lawful," a firearm regulation must either be: (1) explicitly referenced in *Heller*, or (2) supported by longstanding history. *United States v. Chovan*, 735 F.3d 1127, 1137-38 (9th Cir. 2013).

Here, the Court finds that § 3142(c)(1)(B)(viii) is supported by longstanding history—specifically, surety statutes. "In short, [surety statutes] required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm." *Bruen*, 142 S. Ct. at 2148. Surety statutes required a "specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" *Id.* (citing Mass. Rev. Stat., ch. 134, § 16 (1836)).

This clearly resembles modern-day Condition #4. Condition #4 prohibits individuals accused of a crime from possessing a weapon while on pretrial release if a judicial officer determines, based on evidence provided at an adversarial proceeding, that such condition is necessary to ensure the safety of the community. Condition #4 and surety statutes differ in that surety statutes allowed an individual to possess a weapon

provided they post bond. By contrast, Condition #4 is a complete ban. However, nothing in *Chovan* suggests that this difference is a death knell for Condition #4. At bottom, there is a longstanding tradition of regulating individuals accused of a crime and likely to "breach the peace." *Cf. United States v. Kays*, --F. Supp. 3d--, 2022 WL 3718519, at *4-5 (W.D. Okla. Aug. 29, 2022) (finding 922(n) restriction on indicted people was constitutional because it is analogous to surety statutes).

Further, *Bruen* stated that "analogical reasoning under the Second Amendment is [not] a regulatory straightjacket . . . ." *Bruen*, 142 S. Ct. at 2133. Requiring a near perfect match between a modern-day regulations and historical regulations would likely render *Bruen*'s analogical historical reasoning exactly this "regulatory straightjacket." *See also Charles*, 2022 WL 4913900, at *8 ("[I]f the historical analysis must be so tightly constrained to historical analogies involving categorical restrictions of *only* felons and firearms, like Defendant argues here, there are likely very few (if any) modern firearm regulations that would survive."). Thus, the Court finds that § 3142(c)(1)(B)(viii) is not facially unconstitutional. It is supported by a longstanding historical tradition and is presumptively lawful.

However, this longstanding tradition only supports the constitutionality of § 3142(c)(1)(B)(viii) to the extent that the pretrial release condition is supported by a finding that the Defendant poses a danger, i.e., the Defendant is "reasonably likely to breach the peace." *Bruen*, 142 S. Ct. at 2148. This requires judicial officers to make an individualized finding for each Defendant and determine whether their background, criminal history, and/or the crimes they are now charged with provide sufficient evidence that they pose a potential risk of danger to another person or the community. Condition #4 should not be a blanket prohibition for anyone on pretrial release, as Mr. Perez-Garcia argues it has become in this District. *See* ECF No. 59 at 9 ("A review of public dockets

suggests that the condition has been imposed in every criminal case filed in this district in the last month.") (citing ECF No. 59, Exh. B. at ¶ 3).

### iii.  *Bail Reform Act of 1984*

In enacting the Bail Reform Act of 1984, Congress was concerned with not only the risk of flight but also the safety of the community. Through the Bail Reform Act of 1984, Congress hoped to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." S. Rep. No. 98-225, at 3 (1984). The Government argues that Condition #4 is constitutional because of the safety concerns of pretrial officers who routinely interact with individuals on bail. While the safety of pretrial officers is certainly a valid concern in many cases involving individuals charged with serious felonies, the concern would not justify the prohibition in all felony cases. To the extent that it is imposed in every case without an individualized determination, Condition #4 may violate the Second Amendment.

Congress identified cases, including 21 U.S.C. § 952, in which the defendant is charged with a felony punishable by 10 years or more in custody as a serious and dangerous federal offense that triggers a **presumption** no condition or combination of conditions will ensure the safety of the public. *Id*. at 20. The Senate Report observed that it is "well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Id.*

Here, Defendant is charged with importing 11.24 kilos of methamphetamine and .45 kilos of fentanyl. ECF No. 1 at 4-5. Following his arrest, Mr. Perez-Garcia, the passenger, and the driver of the vehicle admitted that they knew they were importing

narcotics. *Id.* Defendant faces the possibility of over 10 years in prison, and as such, there is a presumption no condition or set of conditions will ensure the safety of the community. The nature of the charges and weight of the evidence supports a conclusion that Defendant is a danger to others and that Condition #4 is appropriate.  Thus, for these reasons, § 3142(c)(1)(B)(viii) is constitutional as-applied to Mr. Perez-Garcia.

Finally, as further § 3142(c)(1)(B)(viii)'s constitutionality, § 3142(c)(1)(B)(viii) is a materially different law from the laws at issue in both *Heller* and *Bruen*. The *Heller* statute in effect completely banned handgun possession in the District of Columbia. *Heller*, 554 U.S. at 575-76. The *Bruen* statute required an individual to demonstrate a "special need for self-defense" beyond that of the general public before issuance of a license for public carry. *Bruen*, 142 S. Ct. at 2122. Both of these regulatory regimes were indiscriminately applicable to the general public. In contrast, § 3142(c)(1)(B)(viii) only applies to a narrow subset of individuals accused of a serious felony charge, released pending trial, and, in the view of a judicial officer, pose a risk of danger to the community. Condition #4 is a *temporary* restriction based on a finding made after an *adversarial* hearing in which a Defendant is permitted to have counsel and put forth evidence. The existence of an adversarial hearing renders § 3142(c)(1)(B)(viii) different from 18 U.S.C. § 922(n), which bars individuals under indictment from receiving a firearm, and other licensing regimes with no similar procedural safeguards. *See e.g.*, *Quiroz*, 2022 WL 4352482, at * 10-11 (stating that the lack of procedural safeguards cuts against the constitutionality of § 922(n)).

For the reasons stated above, the Court imposes the temporary firearms prohibition because it will reasonably assure the safety of the community.

## CONCLUSION

In conclusion, the Court finds § 3142(c)(1)(B)(viii) "presumptively lawful" because it is supported by a longstanding historical tradition. Condition #4 is

constitutional as-applied in Mr. Perez-Garcia because the weight of the evidence is strong, and he is charged with a serious drug crime that carries a presumption no condition or combination of conditions can reasonably ensure the safety of the community. Thus, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED**.

Dated: December 6, 2022

Hon. Gonzalo P. Curiel
United States District Judge